

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. C-2169
Re: Liability of an agency, making reports on insurance applicants, for taxes under Article 7061, Revised Civil Statutes.

This is in answer to your request for our opinion on whether or not a certain agency is liable for the "collecting" and "commercial agency" tax provided for in Article 7061 of the Revised Civil Statutes of Texas.

The facts that you gave us and which we ascertained in a subsequent conversation with you are as follows: The concern in question, which we will refer to as the agency, is a foreign corporation with a permit to do business in Texas, its charter providing in part that its business shall be "the making of reports to insurance companies concerning the propriety or advisability of accepting applications for insurance". The actual business of said agency, with which we are concerned here, consists of making reports to insurance companies as to the health, character and veracity of persons who are applicants with said insurance companies. When an insurance company that is a subscriber to the service rendered by said agency desires information on an applicant with regard to such applicant as an insurance risk, said insurance company asks for such information from said agency and the agency seeks to obtain the information and convey it to the insurance company. You have advised us that when said agency entered Texas it began issuing individual reports on persons, covering them individually and not as engaged in business, reporting on their personal rating or standing for insurance, and that this plan of operating has been followed down to the present day.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

You desire to know whether or not said agency is required to pay a tax under Article 7061 on the gross amount received for business done and reports made as outlined above.

The answer to your inquiry must be found in said Article 7061, which reads as follows:

"Each individual, company, corporation or association, owning, operating, managing or controlling any collecting agency, commercial agency or commercial reporting credit agency within this State, and charging for collections made, or business done, or reports made, shall make quarterly, on the first days of January, April, July and October of Each year, a report to the Comptroller under oath of the individual or of the president, treasurer, or superintendent or such company, corporation, or association, showing from business done within this State the gross amount received in the payment of charges for collections made and business done and reports made during the quarter next preceding. Such individuals, companies, corporations or associations at the time of making said report shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date equal to one-half of one per cent of said gross receipts as shown by said report."

Liability of said agency for taxes on said business under said article depends upon whether or not said business is a "commercial agency or commercial reporting credit agency", as those terms are used in the statute. The only Texas case construing this Article is the case of Merchants Redbook Company v. State, (Com. App.) 125 S. W. (2d) 279; and in determining whether or not the agency involved in that case was a commercial agency, the court said:

"It is undisputed that the Merchants Red Book Company is a 'reporting credit agency,' but appellants strongly urge that it is not a 'Commercial' reporting credit agency, as that term was defined at the time of the original enactment of Article 7061. It appears with reasonable certainty that the terms 'mercantile agencies' and 'commercial agencies', being regarded as synonymous, have for a long time had a definite meaning. See 40 Corpus Juris, p. 636. In the case of City of Brookfield

v. Kitchen, 163 Mo. 546, 63 S. W. 825, 826, the
Supreme Court of Missouri, speaking of 'commercial
or mercantile agencies,' said:  'Such agencies are
defined to be establishments which make a business
of collecting information relating to the credit
character, responsibility, and reputation of
merchants for the purpose of furnishing the informa-
tion to subscribers, - e.g. ᴴ. C. Dun & Co. Agency,
Bradstreet Company, etc. 5 Am. & Eng. Enc. Law (1st
ed.) p. 280; Web. Int. Dict.'

"Corpus Juris gives the following definition:
'A commercial or mercantile agency may be defined
as a person, firm, or corporation engaged in the bus-
iness of collecting information as to the financial
standing, ability, and credit of persons engaged in
business; and reporting the same to subscribers or
customers applying and paying therefor.' (Underscoring
ours)

This definition by the court corresponds with the definition
of "mercantile agency" in Webster's New International Diction-
ary, 2nd Edition, which says:

".  . . an establishment or institution which
collects information as to the character, responsi-
bility, credit, reputation, etc., of merchants or
others doing business, and furnishes such information
to others for a subscription price; a commercial
agency."

It will be noticed that the Texas courts and the dis-
tionary definition considers that the reports must be in re-
gard to merchants and others doing business.  In the case in
question the person on whom the reports are made are not nec-
essarily merchants or persons engaged in any kind of business,
but they might be applicants for insurance who are not in any
business at all.

In our search of the authorities we find that through-
out the history of "commercial agencies" and "mercantile agen-
cies" they existed for the purpose of informing merchants as to
the credit standing and dependability of buyers of merchandise.
An interesting case on this question is the case of State v.

Morgan, 2 S. D. 32, 48 N. W. 314, by the Supreme Court of South Dakota, which we will quote from at length, as follows:

". . . Mercantile commercial agencies, as we understand them, are establishments which make a business of collecting information relating to the credit, character, responsibility, general reputation and other matters affecting persons, firms, and corporations engaged in business, for the purpose of furnishing this information to its customers for a cash consideration. These agencies have become recognized and permanent adjuncts to the world of trade. Their rise and progress are of but recent date. According to a little work entitled 'The Law Relating to Mercantile Agencies,' recently published by T. & J. W. Johnson & Co., Philadelphia, and written by I. W. Errant, the American system of mercantile agencies owes its origin to the work done by one Church, who was at first a commercial traveler. On his business tours it was his custom to make notes for his own use, as to the habits, etc., of different persons and firms with whom he dealt. Other merchants, hearing of his custom, would come to him, and ask information in relation to the same persons. At last he was employed by 30 New York houses to travel in the south and west to collect information for them. His labors suggested the idea of establishing an institution which should make a business of collecting information concerning the responsibility, etc., of local business firms and corporations that were seeking credit in the larger cities. In 1841 the first organized 'Mercantile Agency' was formed by Lewis Tappan. This was followed in 1842 by one called 'The Commercial Agency.' The mercantile agency of Tappan was succeeded by Benjamin Douglas & Co., and this firm by R. G. Dun & Co. A few years after the establishment of 'The Mercantile Agency' and the 'Commercial Agency', J. M. Bradstreet established 'The Improved Mercantile Agency,' which was some years afterwards incorporated, and known as 'The Bradstreet Company.' The mercantile and commercial agencies were originally established for the purpose of reporting the credit of buyers. It was Bradstreet who first published a book giving ratings. The other agencies

soon followed his example. Latterly there have been established what are termed 'Special Agencies', which confine themselves to reporting a particular business, such as furniture, stationery, jewelry, and hardware." (Underscoring ours)

In the case of Genesee Sav. Bank v. Michigan Barge Company, 52 Mich. 164, 17 N. W. 790, the Supreme Court of Michigan said:

" . . . The business of these agencies is well known to the commercial community. Indeed it is said by Justice Rapallo, in Eaton, Cole & Burnham Co. v. Avery, 83 N. Y. 31, 'that the business and office of these agencies are so well-known, and have been so often the subject of discussion in adjudicated cases, that the court can take judicial notice of them. Their business is to collect information as to the circumstances, means, and pecuniary ability of merchants and dealers throughout the country, and keep accounts thereof, so that the subscriber to the agency, when applied to by a customer to sell goods to him on credit, may, by restoring to the agency or to the lists which it publishes, ascertain the standing and responsibility of the customer to whom it is proposed to extend credit." (Underscoring ours)

In the case of Furry v. O'Connor, 1 Ind. App. 573, 28 N. E. 103, the Appellate Court of Indiana said:

". . . Commercial agencies have become vast and extensive factors in modern commercial transactions, for furnishing information to retail dealers and jobbers as well as to wholesale merchants. The courts are bound to know judicially that no vendor of goods at wholesale can be regarded as a prudent business man if he sells to a retail dealer upon a credit without first informing himself through these mediums of information of the financial standing of the customer, and the credit to which he fairly is entitled." (Underscoring ours)

In the case of Stevens v. Ludlun, 46 Minn. 160, 48 N. W. 771, the Supreme Court of Minnesota said:

"This business of a commercial agency is to get such information as it can relative to the business and pecuniary ability of business men and business concerns, and communicate it to such of its patrons as may have occasion to apply for it." (Underscoring ours)

The definition of "commercial agency" given in Bouvier's Law Dictionary, Rawle's Third Revision, is as follows:

"COMMERCIAL AGENCY. A person, firm, or corporation engaged in the business of collecting information as to the financial standing, ability, and credit of persons engaged in business and reporting the same to subscribers or to customers applying and paying therefor." (Underscoring ours)

In 18 R. C. L. 997, we find a statement as follows:

"Mercantile agencies are establishments which make a business of collecting information relating to the credit, character, responsibility, general reputation, and other matters affecting persons, firms, and corporations engaged in business, for the purpose of furnishing this information to subscribers thereto for a cash consider tion. Their object is to procure through sub-agents, servants and correspondents such information concerning the trustworthiness of persons and corporations engaged in trade or commerce as shall enable their subscribers safely and properly to conduct business with strangers or distant customers." (Underscoring ours)

These cases bring us to the conclusion that in order for a business to be that of a "commercial agency" it must consist of making reports on merchants or others engaged in business. A "commercial reporting credit agency" may consist of making credit reports upon persons in their individual capacities without regard to their businesses. However, as we understand the nature of the reports in question they cannot properly be classified as credit reports.

It is our opinion that the agency in question is not required to pay a tax under Article 7061 on the gross amount received for the business done and or make a report of said

business, as outlined in your inquiry and discussed herein. However, if this agency does other business which constitutes the business of a "commercial agency or commercial reporting credit agency," the liability for the tax on such other business would not be governed by this opinion.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          /s/
Cecil C. Rotsch
Assistant

CCR:GO

APPROVED AUG 22, 1940

/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered and Approved in Limited Conference.